## BOSLEY v. FARQUAR and Another.

The record showed that a suit had been commenced in the *Orange* Circuit Court, and that a declaration and plea had been therein filed; that the declaration and plea, with an affidavit for a change of venue, were afterwards on file in the *Washington* Circuit Court; that the cause was tried, and a verdict rendered for the plaintiff, a new trial granted on the defendant's motion, a second verdict and final judgment rendered for the plaintiff, in the last-named Court. *Held,* that the circumstance of the record's not showing an order for a change of venue, could not be assigned for error, no objection having been made below to the jurisdiction of the *Washington* Circuit Court.

In an action against a sheriff for a false return, the execution is admissible in evidence, though it do not specify the day on which it is returnable.

The sheriff's return to a fieri facias was, that he had not levied because the plaintiff would not give him an indemnity : *Held,* that this return was unknown to the law, and that the cause must stand as if no return were made.

Even if such an indemnity could be required in any case, it should be demanded as soon as the circumstances authorising the demand were known to exist.

If the sheriff, in consequence of vague rumors as to whether certain goods are the debtor's or not, return nulla bona without having the right of property tried by a jury,— he will be liable for a false return, on proof that the goods were subject to the execution.

If it appear that a person has acted generally as a deputy sheriff, with the sheriff's knowledge and consent, the sheriff is liable for the official acts of such person, though he may not have given him any express authority.

The jury, about to retire to consider of their verdict, were instructed by the Court, that should they agree before the meeting of the Court on the following day, they might seal up their verdict, disperse, and hand in their verdict on the next morning. The jury gave in their verdict on the next morning. *Held,* 1st, that as the record did not show the dispersion of the jury, no objection founded on their dispersion could be noticed on a writ of error; 2dly, that as the instruction was not objected to when given, the dispersion were it shown could not be assigned for error.

May Term, 1827.

BOSLEY v. FARQUAR.

ERROR to the *Washington* Circuit Court.—Action on the case by *Farquar* and *Collins* against *Bosley*, sheriff of *Orange* county, for a false return to a writ of fieri facias. Plea, the general issue. Verdict and judgment for the plaintiffs.

Saturday, May 12.

HOLMAN, J.—*Farquar* and *Collins* in their declaration against *Bosley*, show the recovery of a judgment in their favour against *H. Stephen*, for 138 dollars and 92 cents; and the issuing of a fieri facias thereon, which was placed in the hands of *Bosley* as sheriff; averring that *Stephen* had sufficient property to satisfy said execution; but that *Bosley* refused to levy the execution, and falsely returned it not levied, because the plaintiffs would not give him a bond of indemnity; and averring also, that the sheriff never requested a bond of indemnity of the plaintiffs. The defendant pleaded not guilty. This declaration and plea were filed in the *Orange* Circuit Court. Afterwards, they, together with an affidavit for a change of venue, were found among the records of the *Washington* Circuit Court. No order for a change of venue appears, but no objection was made to the jurisdiction of the *Washington* Circuit Court, where the case proceeded through several continuances, and two trials by jury, to a verdict in favour of the plaintiffs, on which judgment was given. After the first verdict, the defendant obtained a new trial. When the second verdict was found, he again moved for a new trial which was refused; whereupon he filed a bill of exceptions setting forth the whole of the evidence.

The bill of exceptions contains the judgment in favour of the plaintiffs, the fieri facias that issued thereon, and the sheriff's return. It also contains a judgment in favour of *Clendenin* against *H. Stephen*, for 271 dollars and 75 cents, and a fieri facias thereon, which was levied on a variety of articles of household furniture, a lot of fur, and a number of law books in the hands of third persons. This property, except the lot of fur and the law books, was sold for 130 dollars and 53 cents. The lot of fur was claimed by *J. Stephen*, the right of property was tried, and found against the claimant, who appealed to the Circuit Court; and the books were not sold for the want of buyers. A venditioni exponas issued for the sale of the books. These books were principally in the possession of *Blanchard*, who claimed a lien on them for 170 dollars, and who refused to give them up until that sum was paid. The books, thus situ-

ated, sold for 400 dollars under an agreement between *H. Stephen* and the purchaser, that, after satisfying the execution, the purchaser should retain the balance of the purchase-money. The witness does not know that they would have sold for as much on a regular sale.

It appeared in evidence, that the plaintiffs' and *Clendenin's* executions were both placed in the hands of *Lindley*, as the deputy of *Bosley*, on the same day, but that the execution of the plaintiffs was first, and that *Lindley* was charged by one of the plaintiffs to levy it first, or he would hold him responsible; that, a day or two afterwards, *Clendenin* took his execution out of the hands of *Lindley* and placed it in *Bosley's* hands, and on *Bosley's* refusing to levy it without a bond of indemnity he gave the indemnity; and that afterwards, on the same day, *Lindley* placed the execution of the plaintiffs in *Bosley's* hands; and that *Lindley* generally acted as a deputy sheriff under *Bosley*. One of the witnesses had an impression that *Bosley* told him that *Lindley* was his deputy. It also appeared in evidence that an idea prevailed, that the property of *H. Stephen* was not liable to execution, and that *Bosley* had received the opinion of an attorney at law to that effect, by whom he was advised to exact a bond of indemnity of the plaintiffs before he levied their execution.

Objections were made, by the defendant, to the reading of the judgments and executions in evidence; and to the execution of the plaintiffs in particular, because the return day was not inserted; but the Court permitted them to go in evidence to the jury.

The defendant moved the Court to instruct the jury, that under the circumstances of doubt, in which *H. Stephen's* property was involved, the sheriff was justified in not levying the plaintiffs' execution without a bond of indemnity; which instruction the Court refused to give. And the Court instructed the jury that if they were satisfied, from the evidence, that *Lindley* did act generally as the deputy of *Bosley*, and with *Bosley's* knowledge and consent, that *Bosley* was responsible for his acts, and that proof of a written appointment or bond was unnecessary.

In reviewing those proceedings, we cannot but perceive that the objection to the jurisdiction of the *Washington* Circuit Court comes too late. If the venue had not been regularly changed,

or not changed at all, from *Orange* to *Washington*, this matter should have been rectified in the *Washington* Circuit Court, before any other proceedings were had in the case. As no objection was then made, nor in fact made at any time in that Court, none can avail here.

The motion to reject the plaintiffs' execution from being read as evidence to the jury, because the return day was not inserted, was properly overruled.    The execution commands the sheriff to return the money made, together with the writ, but does not specify the day when this is to be done; but that Court, no doubt, according to the act of assembly, had regular return days, so that the sheriff could be at no loss when the execution was to be returned.    In *England*, executions are returnable to the terms of the Court, yet an execution returnable out of term is not void, but only voidable.    *Campbell* v. *Cumming*, 2 Burr. 1187.    So also in *New-York*.    *Cramer* v. *Van Alstyne*, 9 Johns. R. 386.    In *Kentucky*, an act of assembly requires that there should not be more than 90 days between the test and return day of an execution; yet it was there held, in an action for not returning an execution which was returnable more than 90 days from the test, that the execution was not void but only voidable, and that the sheriff was liable for not returning it. *Wilson* v. *Huston*, 4 Bibb, 332.    Similar doctrine may be found in a variety of cases.    See *Shirley* v. *Wright*, 2 Ld. Raym. 775. S. C. 2 Salk. 700.—*Williams* v. *Rogers*, 5 Johns. R. 163, and the cases there cited.    We consider that the omission of the day of return in this case did not render the execution void; the sheriff might have justified under it, and is liable for not levying it.

The reason assigned, in the sheriff's return for not levying this execution, is insufficient to justify or excuse him.    The return is unknown to the law.    There is no general rule laid down in the books on the subject of indemnifying the sheriff in doubtful cases.    In the case of *Bayley* v. *Bates*, 8 Johns. R. 187, it is said to be the usual course for the sheriff to take an indemnity, by bond, from the plaintiff, if the question of property be doubtful or litigated.    But it does not appear that the sheriff can demand an indemnity as a matter of right, or refuse to act if it is not given.    Such appears to be the doctrine contained in the case of *M'George et al.* v. *Birch*, 4 Taunt. R. 585.    There the sheriff had taken the goods of a bankrupt in execution, at

# OF THE STATE OF INDIANA. 65

the suit of *Cohen.* The assignees gave notice to the sheriff, that they claimed the goods. He apprized *Cohen* of this and requested him, either to authorise the delivery of the goods to the assignees, or to indemnify the sheriff; but *Cohen* refused to do either. He then desired the assignees to receive the goods and give an indemnity, which they also refused, and commenced an action against him. The state of the case being made known to the Court, they took measures to secure the sheriff; but the course pursued is very far from leading to the idea, that the sheriff would be excused from acting on the execution for want of an indemnity. It does not appear to be obligatory on the plaintiff to indemnify the sheriff in any case; and if he fails or refuses to do so, there are various methods suggested in the books by which the sheriff may be protected from injury. See the above case of *M'George* v. *Birch,* and the cases cited in *Bayley* v. *Bates.* But we have seen no case where a sheriff is said to be excused in not acting on an execution for want of an indemnity. If an indemnity is offered, or given, the sheriff may be, and is, required to do many things that he would be justified in not doing if there was no indemnity; and if he refuses an indemnity, when offered, he will be held liable in many cases where he would be otherwise excused. *Bayley* v. *Bates,* supra.—*Van Cleef* v. *Fleet,* 15 Johns. R. 147.—3 Stark. Ev. 1344, and the cases there cited (1).

But even if a sheriff were justified in not acting on an execution unless an indemnity were given, it would seem to be a necessary part of the rule that he should apprize the plaintiff of the state of the case, and of his determination not to act without an indemnity. And this should be done when he received the execution; or, if the doubts in which the goods of the debtor were involved were then unknown, he should seek the earliest opportunity, after he ascertained that the goods were in dispute, to inform the plaintiff of the circumstances of the case. In this case the plaintiffs aver in their declaration, that the sheriff never requested an indemnity of them; nor does it appear that he at any time informed them that there was any necessity for an indemnity. His having neglected to give this information to the plaintiffs, and having given it to *Clendenin,* whereby *Clendenin* procured the levying of his execution, seems to manifest on the part of the sheriff, a disposi-

*May Term, 1827.*

BOSLEY
v.
FARQUAR.

9

tion to give an undue preference to the younger execution; an evil against which the rules of law are intended to guard.

When a sheriff receives a fieri facias, it is his duty to use due diligence in searching for the property of the debtor; and if he finds it involved in doubt and dispute, he should make every inquiry that the nature of the case presents, in order to ascertain to whom it actually belongs; and for this purpose he may have the right of property tried, as directed by the act of assembly (2). But if he should be influenced by vague and uncertain rumors, as to the goods of the debtor, and, without inquiring into the right, should return nulla bona, and it should afterwards appear that the goods were liable to the execution, there can be no doubt but that the sheriff would be liable for a false return. 3 Stark. Ev. 1344.

In this case the return being unknown to the law, is as if there was no return at all, which, in legal construction, is a false return; and such in fact is the effect of this return, if taken in the full force of its expressions; it conveys the idea that the sheriff has not acted on the execution. But suppose the sheriff, in this case, had returned nulla bona, the usual return when the sheriff supposes he is justified in not levying on the supposed property of the debtor, and the facts that appeared in the proceedings under *Clendenin's* execution, had been shown in evidence,—can there be a question but that the sheriff would be liable for a false return? The execution of the plaintiffs was for 138 dollars and 92 cents, and the goods sold on *Clendenin's* first execution amounted to 130 dollars and 53 cents, nearly enough to satisfy the execution; and, about the ownership of these goods, there does not appear to have been any doubt or dispute whatever. This, with the sale of the books, for a sum so far above what would have been required to satisfy the execution of the plaintiffs, shows conclusively that if the sheriff had levied their execution, instead of *Clendenin's*, that it might have been satisfied. Nor does it appear that the sheriff experienced any peculiar difficulty, or was exposed to any peculiar danger, in making this levy and sale; nothing has been seen that suggests any other idea than that the sheriff, with ordinary diligence, might have known the true state of so much of the debtor's goods, as would have satisfied the execution of

the plaintiffs. So that, in every point of view, we think the sheriff's return unwarranted by law.

The instructions given by the Court to the jury, respecting the liability of *Bosley* for the acts of *Lindley*, were correct. If *Lindley* acted generally as the deputy sheriff of *Bosley*, with *Bosley's* knowledge and consent, *Bosley* should be liable for his official acts, even if he had never given him express authority.

After the jury in this case were sworn, and the evidence heard, the Court, being about to adjourn, authorised the jury that, if they made up their verdict before the Court was again open, they might seal it up and disperse, and hand in their verdict when the Court opened the next morning. The next morning the verdict was given in, and this is assigned for error. But the plaintiff in error should recollect that it does not appear of record that the jury did disperse; they may have continued in their room all night; nor does it appear that the plaintiff in error made any objection to this direction of the Court. If no objection was made at the time to the dispersion of the jury, after they had made up and sealed their verdict, there was no error committed, even if the jury had left their room according to the privilege given by the Court (3).

*Per Curiam.*—The judgment is affirmed with 1 *per cent.* damages and costs.

*Rowland* and *Farnham*, for the plaintiff.

*Nelson*, for the defendants.

---

(1) If the property in goods taken under an execution be in dispute, as frequently happens in the case of bankruptcy, &c., the Court upon the suggestion of this or any other reasonable cause, by the sheriff, will enlarge the time for making the return, until the right be tried, or until one of the parties have given the sheriff a sufficient indemnity. Semb. 7 T. R. 173.—2 W. Bl. 1064, 1181.—7 Taunt. 294.—1 Bingh. 71. This, however, is not to be considered a general rule; but the indulgence will be granted only in special cases, under particular circumstances, because the sheriff, where the property is in dispute, may summon an inquest to say whose property it is, before he returns the writ. But in all cases where the doubt arises from a point of law, and not from mere matter of fact, the Court upon application will enlarge the time for making the return. See 4 Taunt. 585.—7 T. R. 173.—1 Taunt. 120.—1 Arch. Pr. 288.

The following are some of the cases on this subject:—

Where a commission of bankrupt has been issued against a defendant, and his assignees claim the property, and the plaintiff refuses to indemnify the sheriff, the Court will enlarge the time for the sheriff's returning the fieri facias until the next term. But there must be a rule to show cause. *Ledbury* v. *Smith*, 1 Chitt. R. 294.

May Term,
1827.

BOSLEY
v.
FARQUAR.

An action having been brought against the sheriff by the assignees of a bankrupt for taking goods after the bankruptcy, on a writ issued out of C. P., in which Court time had been given to return the writ, this Court, K. B., staid the proceedings until an indemnity was given to the sheriff, on the terms of his paying over to the assignees the money levied, and the costs of the action against the sheriff. *Probinia* v. *Roberts*, 1 Chitt. R. 577.

A sheriff may apply to the Court for a rule to enlarge his return to a venditioni exponas, from term to term, if the defendant become bankrupt, unless he be indemnified by the assignees in paying over the money levied under it, or the rule for such enlargement be duly discharged. *Venables* v. *Wilks*, 4 J. B. Moore, 339.

A rule to show cause, why the rule. calling on the sheriff to return a fieri facias, should not be enlarged until the sheriff should be indemnified, was obtained. On the facts being disclosed, the plaintiff contended that he was not bound to indemnify the sheriff, because he had a right to seize the goods, which were the defendants, wherever he could find them. A third person, who claimed the goods, submitted that he was not bound to give an Indemnity, as he was clearly the owner of the goods. The Court said, that as there was considerable difficulty in determining which of the parties was entitled to have the goods, the sheriff ought not to be called upon to come to that determination; the sheriff ought therefore to be indemnified. The rule for enlarging the time for returning the writ must consequently be made absolute. *Clegg* v. *Woollan*, M. T. 1830, K. B. 1 Leg. Obs. 108.

A rule was obtained to show cause why the sheriff should not have further time to return the writ of fi. fa. directed to him, and under which he had levied. From the facts disclosed, on showing cause, it appeared that whether the property of the defendant vested in his assignees under a commission of bankrupt, depended on the construction to be put on a statute of 6 Geo. 4. The Court thought that the act did not vest the goods of the defendant in the assignees; yet that, as it appeared a question liable to doubt, the sheriff ought to have time to consider the course he would pursue. The Court said that the rule, therefore, would not be made absolute in the common form, but for enlarging the rule to return the writ until the end of the next term. The sheriff might of course in the mean time, come to the Court and apply to enlarge the time still further. Rule absolute. K. B. M. T. 1830, *Ibberson* v. *Dicas*, 1 Leg. Obs. 109.

*Richards* showed cause against a rule, calling on a defendant to show cause why the sheriff should not have time to return the writ until the first day of the next term. The fi. fa. had been made returnable on *Monday* next after the morrow of *St. Martin*. On the 1st of *November*, the writ had been delivered at the sheriff's office, and the sheriff accordingly proceeded to levy. He was then informed, that the whole of the goods on the premises had been assigned to a person named *John Jones*. There was no reason stated for suspecting the assignment to be fraudulent, except that *Jones* was the nephew of the defendant. The parties all lived in the neighborhood, and consequently ample opportunity was afforded of inquiring into the circumstances under which the assignment took place. This was not the ordinary case of an application by the sheriff for indemnity. There was here no bankruptcy. *Tomlinson*, in support of the rule, stated that an application had been made by the sheriff, both to the execution-creditor and to the assignee of the property, for an indemnity; but it had been refused by both. *Littledale*, J., observed, that in the case of a bankruptcy, it was a matter of course to grant time to the sheriff to return the writ until an indemnity was given; and here, he thought, it was only right that the sheriff should have a reasonable time, until the first day of the next term, for the purpose of inquiring into the matter. Rule absolute. K. B. M. T. 1830, *Sutton* v. *Jones*, 1 Leg. Obs. 175.

May Term,
1827.

BOSLEY
v.
FARQUAR.

The sheriff seized, under an execution issued by *Antrobus* against *Lautour*, goods which were in the possession of *Beavan* under a bill of sale from *Lautour*, notwithstanding notice of the bill of sale. The sheriff then applied to *Antrobus* and to *Beavan* severally for an indemnity before proceeding further, but both refused. *Beavan* sued the sheriff in trespass for the seizure. Rule nisi to stay proceedings till the sheriff should have been indemnified. Upon cause being shown, *Tindall*, C. J. said,—This case falls within the general principle, that the sheriff is not, at his own expense, to fight the cause of the contending parties. The proceedings must be staid till an indemnity has been given, and without payment of the plaintiff's costs, because the plaintiff has refused to indemnify when requested. Rule absolute. *Beavan* v. *Dawson*, 6 Bingh. 566. Vide, also, *Keightley* v. *Birch*, 3 Campb. 523.—*Barnard* v. *Leigh*, 1 Stark. R. 43.—*King* v. *Bridges*, 7 Taunt. 294.

Case, in *N. York*, against a sheriff for a false return of nulla bona to a fi. fa. The defence in part was, that a third person claimed the goods, and that an indemnity was thereupon required, but not given. *Per Curiam.*—It was the duty of the sheriff to make the levy without any indemnity whatever, as he found the goods in the hands of the defendant in the execution; and he would, not have been liable to an action as a trespasser, if he had made such levy. The goods were pointed out to him as the goods of the defendant in the execution; he was exercising acts of ownership over them; they were in his exclusive custody and possession; and the sheriff would have incurred no peril from the act of levying. If, after the officer's first duty was performed, a claim to the property had been interposed, then a jury should have been called to determine the right of property. If by the inquisition, it should be determined that the property was in the claimant, then the return upon the execution should be nulla bona; and such a finding, although it would not be conclusive upon the question of property, would nevertheless justify such a return. Should the jury declare the property to be in a third person, then the sheriff could not be compelled to proceed further, without a full indemnity. But, in the first instance, he was bound to make a levy, and there is nothing in this case to excuse his neglect in that particular. The sheriff need never be in difficulty upon this point; for if the title appears doubtful, or the proceedings hazardous, the Court upon application, would extend the time for the making of his return; or he might file a bill of interpleader, and stay all proceedings against him, until the right of property was settled. Indeed, the conflicting claimants could be *compelled* to litigate their claims; and a sheriff, taking the proper course, would never be subjected to damage of any kind. In this case the sheriff refused, or, at all events, neglected to make the levy; and if the plaintiff can show that the goods, found in the possession of the defendant in the execution, were in truth his property, he is entitled to recover. *Williams* v. *Lowndes*, 1 Hall, 579.

(2) There is a difference of opinion, in the *English* books, as to the effect of such an inquisition. *Grose*, J. and *Kenyon*, C. J., have expressed an opinion, that the inquisition would justify the sheriff in returning, if so found, that the defendant has no goods within the county; or that, if it be found that he has, the inquisition will mitigate the damages, in an action of trespass, should the goods turn out not to be the defendant's. *Farr* v. *Newman*, 4 T. R. 633, 648.—*Roberts* v. *Thomas*, 6 id. 88. But it has been since decided, that the inquisition finding the goods to belong to a third person, is not admissible evidence for the sheriff, even in mitigation of damages, in an action against him for a false return of nulla bona. *Glossop* v. *Pole*, 3 M. & S. 175. Though in trespass against the sheriff by a third person claiming the goods, the inquisition, said the Chief Justice in the case last-cited, might perhaps be evidence as to whe-

ther the sheriff had acted maliciously. Ibid. It is also held, that an inquisition made by the sheriff's jury to ascertain to whom the property of goods taken under a fi. fa. belongs, though found in favour of a stranger claiming the goods, is not admissible evidence in an action of trover for the goods, brought by the claimant against the sheriff. *Latkow* v. *Eamar*, 2 H. Bl. R. 437.

The *Indiana* law is as follows: When any person, not the execution-defendant, files with the officer issuing the execution a claim in writing to the goods levied on, supported by an affidavit, the officer who has levied on the property, on being notified of the filing of such claim and affidavit, summons three householders to determine the right of property. This trial is held before a justice of the peace of the township in which the property is found. An appeal lies from the decision of these triors to the Circuit Court of the county. In all cases where a trial of the right of property has been had, the decision, whilst unreversed, is conclusive between the parties. No officer is liable to any prosecution for taking the goods of a stranger in execution, if found in the defendant's possession, unless he be informed of the ownership therein previously to the execution-sale. R. C. 1831, pp. 237, 238.

(3) Indictment for a conspiracy. The evidence for the prosecution not being closed until 11 o'clock at night, the trial was adjourned till the next morning, and the jury were permitted by the judge to retire to their families for the night. On the next morning the jury assembled, and the trial was concluded. Verdict of guilty against three of the defendants. Motion for a rule to show cause why a new trial should not be granted, in consequence of the dispersion of the jury without the defendant's knowledge. *Abbott*, C. J., after stating that the dispersion of the jury did not vitiate the verdict, and that cases similar to the present had of late years frequently occurred, observed—"It is said, that in some of those instances the adjournment and dispersion of the jury have taken place with the consent of the defendant. I am of opinion that that can make no difference. I think the consent of the defendant in such case ought not to be asked; and my reason for thinking so is, that if that question is put to him, he cannot be supposed to exercise a fair choice in the answer he gives, *for it must be* supposed that he will not oppose any obstacle to it; for if he refuses to accede to such an accommodation, it will excite that feeling against him, which every person standing in the situation of a defendant would wish to avoid. I am also of opinion, that the consent of the judge would not make, in such case, that lawful which was unlawful in itself; for if the law requires that the jury shall at all events be kept together until the close of the trial for a misdemeanour, it does not appear to me that the judge would have any power to dispense with it. The only difference that can exist between the fact of the jury separating with or without the approbation of the judge, as it seems to me, is this, that if it be done without the consent or approbation of the judge, expressed or implied, it may be a misdemeanour in them, and they may be liable to be punished; whereas, if he gives his consent, there will be no such consequence of a separation. But though it may be a misdemeanour in them to separate without his consent, it will not avoid the verdict in a case of this kind, as it would if the law required the jury to be absolutely kept together. Now, it is not surmised in this case, that during the night (for it was during night only that the separation took place) any attempt was made to practise upon the jury. If any thing like that could have been shown, the Court would require that matter to be investigated." The other judges expressed similar opinions; and the rule was refused. *The King* v. *Woolf*, 1 Chitt. R. 401. Vide *Barlow* v. *The State*, Nov. term, 1827, post, and note. *Smith* v. *Thompson*, 1 Cowen, 221, and note.