THE STATE, EX REL. LINES ET AL., *v.* SANDLIN ET AL.

CONSTABLE.—*Bond of Indemnity*.—An execution plaintiff is under no obligation to give a bond of indemnity to the constable having the execution.

SAME.—A constable is bound to perform his duty according to law without a bond of indemnity.

SAME.—*Duty to Levy*.—Where property in the possession of an execution defendant is pointed out to a constable, and he is requested to levy on it as belonging to the execution defendant, it is the duty of the constable to make the levy, though the property may have been mortgaged by the execution defendant, or a part of it may have been sold to a third person.

SAME.—*Liability for Failure to Levy.*—Where an execution defendant has property, a constable failing to levy on such goods will be liable for such failure, unless he can clearly show that no damage resulted to the execution plaintiff by such failure.

From the Boone Common Pleas.

*G. W. Stubbs, A. J. Boone, R. W. Harrison,* and *Voss, Davis & Holman,* for appellants.

DOWNEY, C. J.—Action by the appellant against the appellees on a constable's bond, for not levying and making the amount of an execution in favor of the relators, against one Millington Lewis, it being alleged in the complaint that the execution defendant had property, out of which the constable might and should have made the money. The defendants, the constable and his surety, pleaded jointly the general denial, and the constable separately pleaded, "that in all things he obeyed the mandate and bidding of the plaintiff's attorney, and that he used both lawful and unlawful means to secure and make the plaintiff's claim," etc. To the last paragraph, there was a general denial filed by the plaintiff. A trial by the court ended in a finding for the plaintiff, assessing the damages at one cent. There was a motion by the plaintiff for a new trial, which was overruled, and judgment rendered for the amount of the finding.

Among the reasons for a new trial, it was alleged that the evidence was not sufficient to justify the finding, and also that the amount of the assessment of damages was too small.

The only error legally assigned is, that the court improperly refused to grant a new trial.

We will state the facts, in substance, as disclosed on the trial. The bond of the constable was read in evidence, and there was proof that Sandlin was constable. The judgment, which was rendered October 28th, 1871, and the execution thereon were also read in evidence. At the time the execution was issued, November 6th, 1871, the execution defendant was keeping store in connection with his mother-in-law, Mrs. Adair. He had been doing business in his own name.

exclusively up to the 16th day of October, 1871, when he sold her one-half of the store. The execution defendant was keeping house at the time the execution was issued. The stock of goods at that time was estimated at seven or eight hundred dollars. The value of his household goods does not appear. It was on the same day he executed the note to the relators, on which their judgment was rendered, that he sold one-half of his store of goods to his mother-in-law, Mrs. Adair. He then mortgaged the other half to her to secure a note of five hundred dollars. He continued in the possession of the store, sold some of the goods, and purchased others, to renew the stock. On the 20th or 25th of November, he sold the whole stock of goods to Julian and Smith. Out of the proceeds of the sale, a debt of Lewis and a former partner by the name of Varutz, amounting to twenty-three dollars, was paid, and a debt of Lewis alone of three hundred and eighty-eight dollars and ten cents. A part of the price went to pay a debt of the firm of Lewis & Adair. It is shown that the attorney of the relators, about the 10th or 12th of November, 1871, called on the constable and offered him an indemnifying bond, and requested him to levy on the property of the execution defendant, calling his attention particularly to the stock of goods. He said in answer to this, that " Lewis was a clever gentleman and would pay ; that the execution had six months to run, and remarked something about being able to attend to his own business." The witness' says : " He did not take any suggestions kindly from me, but seemed offended." Lewis testified that this witness told the truth, and that he told it just as it was.

Branson, one of the relators, also called on the constable about the middle of November, 1871, and requested him to levy on the goods and household furniture, and offered him an indemnifying bond, with securities, if he would do so. He did not say he wanted any bond, but refused to make a levy.

Conceding that the execution defendant was a resident

householder and entitled to the benefit of the exemption law, still he had no property exempt until he had complied with the statute by making and verifying the schedule required. 2 G. & H. 367, and Acts 1859, p. 150. The statute requires the constable to levy every execution and make at least one offer to sell property levied upon within one month after such execution comes to his hands, if property can be found, unless otherwise directed by the plaintiff or his agent. 2 G. & H. 618, sec. 3, sixth division.

The execution plaintiffs were under no obligation to give a bond of indemnity to the constable. He was bound to perform his duty according to law without such bond. *Bosley* v. *Farquar*, 2 Blackf. 61. It was said in that case, that "if an indemnity is offered, or given, the sheriff may be, and is, required to do many things that he would be justified in not doing if there was no indemnity; and if he refuses an indemnity, when offered, he will be held liable in many cases where he would be otherwise excused." And *Bayley* v. *Bates*, 8 Johns. 187, *Van Cleef* v. *Fleet*, 15 Johns. 147, and 3 Stark. Ev. 1344, are cited as authorities.

Our statute provides an easy mode of settling the question as to the ownership of personal property seized by a constable, before the sale of it, which is to give notice to the party setting up the claim, that he has seized such property, etc., and if the person so notified does not, within the specified time, institute proceedings to try the right to such property, etc., he will be barred from having any action against the officer or the purchaser of such property. 2 G. & H. 635, secs. 17, 18.

The conduct of the constable in this case shows him entitled to justice and nothing else. The levity and falsehood of the second paragraph of his answer, in which he asserts that "in all things he obeyed the mandate and bidding of the plaintiff's attorney, and that he used both lawful and unlawful means to secure and make the plaintiff's claim," his utter refusal to levy on the property of the execution defendant, because he " was a clever gentleman and would

pay," his determination to attend to his own business in his own way, and every other fact in the case show an entire disregard of the rights of those whose interests were at stake, and a gross breach of official duty. The evidence shows that he, on one occasion, called at the store and inquired about property, and received from Lewis the answer that he had no property subject to execution; he went away, and did nothing more. He never made any inquiry, so far as the evidence shows, about the household goods of the execution defendant, or about any other property. We need not decide whether the sale of one-half the goods and the mortgage of the other half, on the same day that the note was executed to the relators, were valid or not. Conceding that the sale was valid, and the mortgage in good faith, it was, nevertheless, the duty of the constable to make the levy. A mortgagor of goods has an interest which is subject to levy and sale on an execution against him. 2 G. & H. 240, sec. 436. The fact that the proceeds of the goods when sold went mostly to pay the debts of Lewis indicates fraud in the mortgage. As the law requires the constable to levy, when there are goods, we think the proper rule is to hold him liable, unless he can clearly show that no damage resulted to the execution plaintiff by his failure to do so. In this case, the evidence did not show that the relators were not damaged by the failure to levy, but on the contrary strongly tended to show that they lost their debt by such failure.

The judgment is reversed, with costs, and the cause remanded, with instructions to grant a new trial.