## JACOB B. MERRICK, Plaintiff in Error, *v.* WILLIAM H. L. WALLACE, Defendant in Error.

### ERROR TO LA SALLE.

A mistake by the recorder in recording a deed, by misdescribing the premises in his record, does not make the deed void, as against a subsequent purchaser or judgment creditor without notice.

The certificate of the recorder upon a deed, giving the date when and page where recorded, is presumptive evidence that the deed was so recorded; and testimony of the strongest kind is required to destroy its effect.

An alteration of a public record cannot deprive an innocent party of the benefit of it, as originally made.

A party performs his duty by leaving his deed for record with the proper officer. The mistakes or faults of the officer do not affect his rights.

The record of a deed, describing premises by an impossible sectional number, is sufficient to put a party purchasing from the same grantor upon inquiry—and may amount to notice of a prior grant.

THIS was an action of ejectment by Merrick against Wallace, for the south-east quarter of section thirty-four, in township thirty-four north, of range three east of the third principal meridian.

Declaration in the usual form. Plea, the general issue. Trial by jury at November term, 1857, and verdict for the defendant.

LELAND & LELAND for Plaintiff in Error.

C. BECKWITH and W. H. L. WALLACE, for Defendant in Error.

BREESE, J. The facts concisely stated in this case are, that Henry Green was seized in fee of the premises in controversy, before and on the 12th day of December, 1835, and that defendant took possession in 1855 ; that a judgment was rendered by the Circuit Court of La Salle county, where the premises are situate, on the 7th of April, 1846, in favor of the plaintiff in error, against the said Green, for twelve hundred dollars ; that the declaration in the suit of *Merrick* v. *Green*—being on a

Merrick *v.* Wallace.

promissory note—was signed by the defendant in error, as the plaintiff's attorney ; that the execution on this judgment issued April 17, 1846, was levied by the officer the same day, and a sale of the premises to the plaintiff in error, May 11, 1846, a certificate of purchase to the plaintiff, and a deed to him from the sheriff, dated April 20, 1848, and filed for record in the proper office, April 26, 1848, and duly recorded in that month.

These make out a good *prima facie* title in the plaintiff in error.

· To defeat it, the defendant attempts to show an outstanding title in a third person, and for that purpose, introduced in evidence a deed from the same Henry Green and wife to one Peter D. Hugunin, dated December 12, 1835, for the land in controversy, and the following certificate, indorsed thereon by the recorder of the county :

Recorder's office, La Salle county. This is to certify that the within deed was this day duly recorded in book B, pages 168, 169, 170.

30*th December*, 1835. ANTHONY PITZER, *Recorder.*

To this certificate, as evidence, the plaintiff objected, and to sustain the certificate, the defendant introduced, as a witness, *John F. Nash*, who testified that he was now the recorder of La Salle county, and that, for a period of ten months, including the month of December, 1835, there was not in the office any book, or. other written evidence, of the filing of deeds for record ; that the book used for that purpose showed the first entry to have been on the 30th March, 1835, and so kept up to the 19th November, 1835, after which day there is a *hiatus* in the book, the first entry being thereafter on the 28th September, 1836, and the last on the 23rd March, 1837. Between the last entry, November 19, 1835, and that of September 28, 1836, there was one blank page, and about one-third of another page blank, the smaller blank. being immediately below the entry of the 19th November, 1835. On the larger blank there were two wafers, indicating, by their appearance, that paper had been attached by them, and been detached. The whole book contained sixty written pages. The hand-writing before the *hiatus*, and that after, was different.

The court then overruled the objection, and admitted the certificate to the jury, and the defendant rested his case.

The plaintiff then introduced a record of a deed, recorded in the recorder's office of La Salle county, in book B, pages 168 and 169, which was an exact copy of this deed from Green to Hugunin, except that the description of the land is as follows : " All of the following described lot or tract of land, to wit : the south-east quarter of section thirteen four, in township number

thirty-four north, of range number three east of the third principal meridian."

Nash, the recorder, being then introduced by the plaintiff, testified that he had examined, and there was no indication of the record of any other deed from Green to Hugunin than the one given from book B, pages 168, 169, except one, of the same deed, made on the 9th of October, 1855, the deed having been brought to the office, by the defendant, a few days before it was recorded. He also testified that there appeared to him to be an alteration on the record of the word thirteen; that it looked as though the "n" might have been added; thought the space between the "e" and the "f," in which the "n" was included, was too large, and that the "n" appeared to be in the same hand-writing as the rest of the deed, or like it, and that the ink appeared to be the same. He also testified that there was, in that office, a tract index, which was so arranged that, under each quarter section, there was a reference to the book and page where conveyances of such quarters, or parts thereof, might be found. This tract book being introduced, an inter-lineation appeared in it, in pencil, of "B 168," in the hand-writing of Philo Lindley, a former recorder, whose term of office commenced in 1849, and that it had been placed there within the last four or five years. It was also proved that the last day of the term at which the judgment against Green was obtained, was the 11th day of April, 1846.

*Peter D. Hugunin,* Green's grantee, deposed that he left the deed from Green and wife to him, for record, sometime between the 1st of December, 1835, and the 7th of November, 1836, and that he received it from the office between those dates; that his impression was, that he filed it for record himself, and left it with Anthony Pitzer, who was the recorder at the time.

To do away with the objection made by the plaintiff, that the defendant was the attorney of the plaintiff in the suit of *Merrick* v. *Green,* the defendant introduced *William Reddick,* who testified that he was the sheriff who made the sale, and that the *fi. fa.* was handed to him, by Green, on the day the levy was indorsed on it; that Green brought it to him from the clerk's office (his office and the clerk's were on the same floor, on opposite side of the hall), and that, at Green's request, he made the levy on the south-east thirty-four, township thirty-four, range three; that the defendant in this suit (Wallace) gave him no directions about the levy, and that he had no recollection that he had anything to do for the plaintiff in his case against Green; that the levy was indorsed on the execution immediately after the execution was handed to him by Green, and the first he saw of the execution was when Green handed it to him.

*Joseph O. Glover*, introduced by the defendant, testified that he once acted as the agent of some person to whom Hugunin had sold this land, in paying taxes on it, and that, in 1838 or 1839, his attention was called to the record of the deed from Green to Hugunin, and that he then thought there had been an alteration of the word " thirtee," by changing it to " thirteen." He also stated that the defendant, Wallace, in April or May, 1846, had been recently admitted to practice; that he did not practice law on his own account until after 1846; had been a student in Judge Dickey's office, but was not then in company with him.

*William H. W. Cushman*, for the plaintiff, testified that the note in favor of Merrick, on Green, was sent to him to collect, and he put it in Judge Dickey's office for that purpose. Does not know whether this defendant was in the office or not, and has no recollection of any particular interview with him. He stated he was the only agent of plaintiff in the county up to the time of testifying, and had sole charge of the land for him from 1846 until the defendant claimed it, in 1855; that he had no notice whatever of the existence of the deed from Green to Hugunin at or before the sale of the land on the execution, and that, if he had known it, he would not have sold it on the judgment.

The plaintiff then offered to prove, by this witness, that he had paid the taxes, as agent for the plaintiff, on this land for the years 1846, 1847, 1848, 1849, 1851, 1852, 1853, 1854 and 1855, to which defendant objected, and the testimony was not admitted. It was conceded the land was vacant and unoccupied up to 1855.

Upon these facts the plaintiff based the following instructions:

1st. That if they (the jury) believe, from the evidence, that Henry Green was, before and on the twelfth day of December, A. D. 1835, seized in fee simple of the tract of land in the declaration mentioned, and that on that day he executed and delivered to Peter D. Hugunin a deed of conveyance of said land, and that said deed to Hugunin was received for record by the recorder, in the recorder's office in LaSalle county, in the State of Illinois, on the sixteenth day of December, A. D. 1835, and that the recorder attempted to record the same on the thirtieth day of December, A. D. 1835, but so inaccurately recorded it that the description of the land, as recorded, was only as follows: All of the following described lot or tract of land, to wit: the south-east quarter of section No. *thirteen four*, in township No. thirty-fourth north, range No. three east of the third principal meridian; and if, after such inaccurate recording, the said Hugunin took said deed out of said office; and if,

32

on the 7th day of April, A. D. 1846, and at the March term, A. D. 1846, of the Circuit Court of said county, and several years after Hugunin had so taken said deed out of said office, and said deed not then being on file in the said office, the plaintiff in this suit obtained a judgment for twelve hundred dollars and costs against said Henry Green in the Circuit Court of said county, and during said year, A. D. 1846, the land in the declaration mentioned was sold by the sheriff, at public sale, on an execution issued on said judgment; and if Merrick became himself the purchaser at said sale; and if, afterwards, in the year A. D. 1848, he obtained the sheriff's deed for said land; and if, at said March term, the court adjourned on the 11th day of April, A. D. 1846, till court in course; and if, at the time said court adjourned, the plaintiff in this suit had had no other notice of the existence of said deed from said Green to said Hugunin than that afforded by the records and files in said recorder's office; and if, on the said last day of the term of said court, there had not been in existence in said office any other or further record of the said deed, or any written evidence of its existence; the law of this cause is for the plaintiff, and he is entitled to your verdict.

2nd.　If the plaintiff in this suit, having a note against Henry Green, employed the defendant to collect it, and if the defendant was then acting as an attorney at law, and as such, undertook to collect said note for the said plaintiff of said Green, and if said defendant, in the discharge of his duty as such attorney, and in order to collect said note, filed a declaration, obtained a judgment thereon, caused execution to be issued thereon, and levied upon said land as the land of said Henry Green, and caused the same to be sold and bid off by the plaintiff, in satisfaction of his said judgment, or any part thereof, and if, afterwards, the defendant took possession of said land, said defendant is estopped, and cannot, in law, be permitted to defend this suit, by proving that said Henry Green had, prior to the rendition of said judgment, conveyed said land to said Hugunin, by said deed, which had, before then, been only inaccurately recorded, as mentioned in the first instruction; and if the facts are as mentioned in this instruction, it is entirely immaterial whether the deed from Green to Hugunin had or had not been recorded, or whether the said record thereof had or had not been altered, or whether the plaintiff had or had not notice of the deed from Green to Hugunin.

3rd.　If the defendant in this cause is shown, by the proof, to have been acting as the attorney at law for the plaintiff, and if, as such attorney, he filed a declaration in said cause of *Merrick v. Green*, and obtained the judgment introduced in evidence,

the presumption of law is, that he continued to act as such attorney till the sale on the execution, in May, A. D. 1846, and in the absence of proof, that the plaintiff discharged him before said sale, or that the relation of counsel and client was before then in some other way dissolved between them, it should be considered by the jury that it was his duty to see that said judgment should not be satisfied by a sale of land, to which the defendant Green had no title ; and if proved to have been the attorney, and the relation of counsel and client between the plaintiff and defendant in this suit has not been shown to have ceased before said sale, as in this instruction mentioned, the defendant is estopped and not permitted, in law, to set up an outstanding title in Hugunin, or any one else, to defeat the plaintiff's title ; and if the facts are as mentioned in the instruction, it is entirely immaterial whether the deed from Green to Hugunin was accurately or inaccurately recorded, or whether the record has been altered or not, or whether the plaintiff had or had not notice of the deed from Green to Hugunin.

4th.   A notice to the plaintiff in this cause, or to his agent, after the last day of the term of the court at which the judgment was obtained, in the case of *Merrick* v. *Green*, of the existence of the deed from Green to Hugunin, is of no avail to defeat the plaintiff's title.   The plaintiff, Merrick, or his agent, must have had such notice before said last day of said term, otherwise the notice is of no benefit to the defendant, or injury to the plaintiff.

5th.   A notice to the defendant, Henry Green, that he had made the deed to Hugunin, is not notice to the plaintiff, Merrick, unless Green was the agent of Merrick, and the fact that Green carried the execution from the clerk's office, and handed it to the sheriff, and turned out the land in the declaration mentioned, and which had been previously sold by him to Hugunin, to be levied upon and sold to satisfy the judgment against himself, does not tend to prove that Green was the agent of Merrick prior to or at the last day of the term at which the judgment against him, and in favor of plaintiff, was rendered, so that notice to Green would be notice to Merrick, as of the last day of the term at which the judgment introduced in evidence was rendered.

6th.   The record of the deed from Green to Hugunin, if the description in the deed, as recorded by the recorder, was the south-east quarter of section thirteen four, instead of the southeast quarter of section thirty-four, is not alone sufficient notice to put a subsequent judgment creditor of Green on inquiry, so as to make him chargeable with having become such judgment creditor, with notice of the existence of the original deed so inaccurately recorded.   Such a record of a deed is only con-

structive notice of what appears on the face of the record, and is not constructive notice that the description in the original deed was thirty-four instead of thirteen four.

7th. It being conceded by the parties that Henry Green was, in the year 1835, the owner of the land in the declaration mentioned, the judgment, execution, and sheriff's deed, introduced in evidence, make a *prima facie* case of title in the plaintiff; and if the facts in relation to the defendant having been the attorney for the plaintiff, are as mentioned in plaintiff's third instruction, the law of the case is for the plaintiff, and he is entitled to the verdict of the jury; and the conveyance by Green to Hugunin, whether properly or improperly recorded, is no defense; nor is it at all material whether the plaintiff had or had not notice of the existence of the deed from Green to Hugunin, nor is it material whether the record of the deed has or has not been altered.

8th. A verdict for the plaintiff should be in the form following, viz.: We, the jury, find the defendant guilty of unlawfully withholding the south-east quarter of section thirty-four, in township thirty-four north, of range three east of the third principal meridian, from the plaintiff, in manner and form as charged in the declaration; and we do further find that the plaintiff is seized of an estate, in fee simple, in and to said premises.

9th. That when the defendant, in an action of ejectment, does not prove title in himself, but relies upon an outstanding title in a third person, such outstanding title, so relied upon, must be a valid, present, subsisting legal title, and not one that has been abandoned by the person in whom said outstanding title is attempted to be proved.

10th. That although the jury may think there are appearances of alterations on the record of the deed, the presumption of law is, in the absence of proof to the contrary, that they were made by the recorder, at the time of recording the deed, and it should not be presumed that unauthorized and improper alterations have been made by the recorder, or any one else, since the act of recording was complete.

11th. It being conceded that Green was the owner of the land in the declaration mentioned, in the year A. D. 1835, then the judgment, execution, and sheriff's deed, make a *prima facie* case for the plaintiff; and if this is so, then the fact that the defendant was in possession of said land in the year A. D. 1855, is not evidence that he had any title to the land at the date of the last day of the term at which the judgment against Green, in favor of the plaintiff, was rendered, and as against the plaintiff's title there is no evidence of title in the defendant.

The court gave the fourth, fifth, sixth, eighth, ninth and tenth

as asked, and refused to give the first, second, third and seventh, and qualified the eleventh by adding, between the word " land" and the word " and," the words, " at the date of the last day of the term at which the judgment against Green, in favor of plaintiff, was rendered."

To the opinion of the court, in refusing to give said first, second, third and seventh instructions, and each of them, the plaintiff then and there excepted, and the said plaintiff then and there excepted to said qualification of said eleventh instruction.

The defendant then requested the court to give the following instructions in writing :

1st. If the jury believe, from the evidence, that Hugunin, the grantee in the deed from Green, filed the deed for record in the recorder's office, in December, 1835, and afterwards, between that time and November, 1836, received the deed from the recorder's office, with the certificate of the recorder indorsed thereon, certifying that the deed had been duly recorded, then Hugunin had done all that was necessary to give said deed effect as to subsequent purchasers and creditors of Green ; and all such subsequent purchasers and creditors are chargeable with notice of the existence and contents of said deed.

2nd. If, on the face of the record of said deed, it was apparent that some mistake had occurred in recording, then all creditors or purchasers from Green were bound to inquire what land was intended to be conveyed by the deed ; and if such inquiry would probably have resulted in the discovery that the land in controversy had been conveyed by said deed, that was as good notice, for all the purposes of this case, as though said deed had been properly recorded.

3rd. The law is, that if a creditor of or purchaser from a person who has previously conveyed land by a deed, which is not recorded, has notice of such deed, it is the same as to him as though such deed were properly recorded. And it is also the law, that notice to an agent is notice to his principal ; and if the jury believe, from the evidence, that Green was the agent of the plaintiff in taking out the execution offered in evidence, and in delivering the same to the sheriff, and in directing the sheriff to levy the same upon the land in controversy, and that Green knew of the execution of the deed from himself to Hugunin, then the law is for the defendant, and the plaintiff cannot recover.

4th. The plaintiff is bound to show title in himself before he can recover. The defendant is not bound to show title to the land ; and unless it is shown by proof that the plaintiff had title to the land in controversy, at the commencement of this suit, the jury should find for the defendant.

5th. The certificate of the recorder, on the back of the deed,

that said deed had been duly recorded, is conclusive evidence of the fact that the deed was properly recorded, and such certificate cannot be contradicted by the production of the record, showing a mistake in the recorder.

6th. The certificate of the recorder, on the back of the deed from Green to Hugunin, is *prima facie* evidence, at least, that the deed was properly recorded ; and if there has been an alteration in the record since the recording of the deed, such alteration cannot prejudice the right of the grantee in such deed.

7th. If the jury believe, from the evidence, that said deed from Green to Hugunin was received for record by the recorder of LaSalle county, in December, 1835, and was recorded by him, and in recording the same he recorded the description of the land as " the south-east quarter of section thirtee four," &c., that was a sufficient recording of the deed ; and any alteration of the record afterwards, either by the recorder, or any other person other than the grantee in the deed, or his agent, or a person claiming under him, would not prejudice the grantee's title.

8th. Even if the deed from Green to Hugunin was inaccurately recorded in 1835, yet, if it was then filed for record, and was not, in fact, accurately recorded until 1855, yet such accurate recording in 1855 will relate back to the time of the original filing of the deed for record in 1835, and be notice to subsequent purchasers and creditors of Green from that time.

For defendant. Qualification of plaintiff's ninth instruction :

But a title is not considered abandoned in law, by mere lapse of time, until twenty-one years have elapsed without the party asserting claim under the title.

The court gave the first, fourth, sixth and seventh, and also the instruction qualifying the plaintiff's ninth instruction, and refused the second, third, fifth and eighth ; and to the giving of the same the plaintiff then and there excepted.

The jury found for the defendant. The plaintiff moved for a new trial. The court overruled the motion, and plaintiff excepted.

The case being brought here by writ of error, the plaintiff assigns the following errors :

1st. The court erred in excluding evidence offered by plaintiff below.

2nd. Court erred in admitting evidence objected to by plaintiff below.

3rd. Court erred in refusing to give the first, second, third and seventh instructions asked for by plaintiff below, and in qualifying plantiff's eleventh instruction.

4th. The court erred in giving the first, fourth, sixth and

seventh instructions on the part of the defendant below, and in giving the qualification to plaintiff's ninth instruction.

5th. The court erred in overruling the motion of plaintiff for a new trial.

6th. The court erred in rendering judgment for the defendant below.

7th. The verdict was against the law and the evidence.

It is now insisted by the plaintiff in error that a mistake made by the recorder, in recording a deed, by describing the premises in the record different from the description in the deed itself, renders the deed void as against a subsequent purchaser or judgment creditor, without notice, and many authorities are cited in support of the proposition, which we do not deem it necessary either to acknowledge or controvert.

The form of the proposition is a *petitio principii*—a begging the question—a mistake by the recorder not having been established. The weight of the evidence, we think, is, that the deed was correctly recorded, with the exception, perhaps, of spelling the word thirty. It would appear that word was recorded as " thirtee." The deed itself is right, the description being south-east of thirty-four, and the record certifies that, as such, it was duly recorded.

It is not to be presumed that the officer making this certificate stated an untruth. Under his official oath, he certifies that the deed was properly recorded, giving the date when, and the book in which it was recorded. In the absence of any proof to the contrary, the presumption is, that the deed was actually recorded as certified. Is there any proof opposed to this? The record is produced, and it is there seen that the words " thirty-four" now read " thirteen four." Can this be accounted for? Does not the testimony of Nash and Glover lead the mind to the conclusion that the record has been altered? Is it not more than probable that the word " thirty" was mispelled on the record " thirtee ;" and what more easy to a person so disposed than to insert an *n* between " thirtee" and " four," so as to make the record read, as it does read, " thirteen four?" Against this certificate of the officer, there must be testimony of the strongest kind to destroy its effect, and there is no testimony of any kind, except the record forged, as there is reason to fear it is. The proof we consider satisfactory that the deed was properly recorded.

The question then arises, being properly recorded, can any subsequent alteration of the record deprive an innocent party of the benefit of the record? Shall not the record be read in evidence according to the fact, as certified by the recorder, and not as it now appears? Is the grantee in any manner respon-

sible for the alteration, and must he account for it ? Can any rule of law, or principle of justice, be successfully invoked to make him responsible ? We know of none. There is nothing to commit him, or those claiming under him, with the alteration, and it cannot well be presumed that a party so claiming would be the instrument of his own injury. Where is the case reported that an innocent grantee shall be sacrificed to fraud or crime ?

Is it any sufficient answer to say, trace up the crime to the criminal, and get your satisfaction out of him ? What can a grantee in a deed do, more than the law requires he shall do, to protect his rights ? He has not the custody of the record, and no obligation rests upon him with any more weight than it does upon every other member of community to watch over the conduct of a public officer. His whole duty being discharged by actually having his deed properly recorded, no subsequent act committed upon that record can affect him under such circumstances as are developed here.

We do not intend to charge the recorder with any participation in this act, but when it is considered how loosely the whole business of the country, in all its departments, was transacted a quarter of a century ago—what easy access every one had to the books, papers and files of a public office—how exposed they were to the dishonest as well as to the honest—with how little chance of detection they could be mutilated or pilfered—the facts here exhibited of this office and its books excite no special wonder.

Considering the testimony of Mr. Reddick, the sheriff, who states that the execution in favor of the plaintiff in error against Green was delivered to him by Green himself, and he specially directed to levy on this particular quarter section of land, well knowing, as he did, that he had conveyed, it years before, to Hugunin, throws around the act a strong shade of suspicion, notwithstanding Mr. Nash says that the letter seems to be in the same hand-writing with the rest of the record, and the ink the same. He, at least, was active in turning the fraud or mistake to his own account.

But assuming the deed was not properly recorded in the first instance, we then say that it is sufficient the deed was left for record by the grantee. He performed his whole duty in so leaving it with the recorder, and though there is no entry of that fact to be found, the mutilation of the entry book, as proved, sufficiently accounts for it, and the grantee has a right to urge, taken in connection with the recorder's certificate on his deed, and the record of the deed, that the abstracted leaves did contain evidence of the filing for record of his deed, and on the further principle, that the law presumes the recorder performed

his duty in that regard by entering it on his book as filed for record. It was certainly filed for record as early as the date of the certificate of recording.

The grantee is entitled to the benefit of all these facts and presumptions, and they must prevail, unless they are destroyed by countervailing evidence.

The fifth section of the act abolishing the office of State recorder, approved January 13, 1833, (Purple's Real Estate Stat. 489,) provides, " that from and after the first day of August next, all deeds and other title papers which are required to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers without notice, and all such deeds and title papers shall be adjudged void, as to all such creditors and subsequent purchasers without notice, until the same shall be filed for record in the county where the said lands may lie."

This was the law in force at the time of the execution of the deed to Hugunin, and, under it, all the duty he had to perform, to make it available against the world, was to place it with the recorder to be filed for record. Before that time it had effect only as against the grantors—after that time, it took effect and was in force against all persons.

It is only by virtue of this law that the plaintiff can claim to postpone defendant's deed, and destroy its effect as against his purchase at the sheriff's sale. He is, in effect, claiming to enforce a statute penalty, imposed upon the grantee in the deed, by reason of his having omitted to do something the law required him to do to protect himself and preserve his rights. The law never intended a grantee should suffer this forfeiture, if he has conformed to its provisions. The plaintiff claiming the benefit of this statute, being, as it is, in derogation of the common law, and conferring a right before unknown, he must find in the provisions of the statute itself the letter which gives him that right. To the statute alone must we look for a purely statutory right. All that this law required of the grantee in the deed, was, that he should file his deed for record in the recorder's office, in order to secure his rights under the deed. When he does that, the requirements of the law are satisfied, and no right to claim this forfeiture can be set up by a subsequent purchaser. The statute does not give to the subsequent purchaser the right to have the first deed postponed to his, if the deed is not actually recorded, but only if it is not filed for record. If it was not properly recorded after the grantee had left it to be filed for record, and by reason thereof, a subsequent purchaser is misled, he surely has no right to say, that the first purchaser shall suffer

by this omission of the recorder to perform his duty, rather than himself. The statute leaves such a loss to fall, where the common law left it. In such a case, the subsequent purchaser cannot call in aid the statute, because his case does not come within its provisions. In such a case, the statute is silent, and the common law must take its course. He must seek his remedy against the recorder.

But the deed was recorded, either accurately or inaccurately. Let it be granted that it was inaccurately recorded, the point we then make is, the record disclosed the fact that a deed for a tract of land, with an impossible sectional number, in township thirty-four north, range three east of the third principal meridian, was recorded, the names of the parties thereto distinctly appearing. Now, a party dealing with the grantor in such a deed, would have his attention arrested by this singular description, and he would naturally be led to inquiry. The record afforded him abundant data, which, properly used, and diligently inquired into, would inevitably have led him to the fact of the existence of this deed.

Mr. Cushman, the agent of the plaintiff, did not go to the records to examine them before he purchased the land under the judgment, or at any other time, and therein omitted to avail himself of the facts there existing, and which must have persuaded him that the record was of the very land he was about to purchase. Suppose the fact to be that Green had but one tract of land, the record would show he had disposed of a tract, and as it has, as it now stands, an impossible sectional number, he would have been admonished, by this fact, of the necessity of further inquiry, which must have resulted in the fact that it was the very land Green did own, on which the judgment attached.

We hold that Mr. Cushman as the agent of the plaintiff, had the means, by the inspection of this record, of obtaining knowledge. He did not profit by those means—he made no examination whatever of the records, as it was his duty to have done.

We hold the plaintiff in error, then, chargeable, if not with actual notice, with the knowledge of sufficient facts to put him upon inquiry, which amounts to notice, and having such notice, or the means of having it, he is not a *bona fide* purchaser. *Robinson* v. *Rowan*, 2 Scam. R. 200.

Not only possession of land, but whatever is sufficient to put a purchaser on inquiry, is notice. *Ropert et al.* v. *Mark*, 15 Ill. R. 541. And of any facts which might be ascertained by ordinary diligence, he will be chargeable. Ib. 542, *McConnel* v. *Read*, 4 Scam. R. 123 ; *Epley* v. *Witherow*, 7 Watts (Penn) R. 163.

The leading case on this question of notice, in our court, is

that of *Doyle et al.* v. *Teas et al.*, 4 Scam. R. 250. The court there say : " It is sufficient, if the channels, which would have led to the truth, were open before him, and his attention so directed that they would have been seen by a man of ordinary prudence and caution, if he was liable to suffer the consequences of his ignorance. The law will not allow him to shut his eyes, when his ignorance is to benefit himself at the expense of another, when he would have them open and inquiring had the consequences of his ignorance been detrimental to himself, and advantageous to the other."

The other point made against the defendant in error, that he drew the declaration, in 1846, in the suit of *Merrick* v. *Green*, places him in no such relation to the plaintiff in error, as the proof shows, so as to prevent him from getting possession of a tract of land claimed by his client. He had nothing to do with issuing the execution, with its levy, or with the sale under it. To all these matters he was a stranger. The rule is, that an attorney cannot be permitted to buy in things in course of litigation, of which litigation he has the management. This, the policy of the law and justice forbids.

The proof offered to show payment of taxes by plaintiff in error, for the years named, was inadmissible for any purpose connected with the title. They did not show payment of taxes for *seven* successive years.

It is wholly unnecessary to consider the instructions in detail, and we will not do so. We see nothing objectionable in them. We will, however, improve the occasion, as we have, in the case of *Merrit* v. *Merrit*, to disapprove the practice of drawing out instructions to such great length, for the purpose, manifestly, of injecting a condensed argument, or speech, into them. Such a practice should not prevail.

The defendant, having shown an outstanding title in a third person, the judgment of the Circuit Court is necessarily affirmed.

*Judgment affirmed.*