# HENRY C. CRAIG

*v.*

# GERSHAM B. DIMOCK et al.

1. STAMP ACT—*State rights and federal power.* While the congress has the power to require instruments, created, and valid, under State laws, to be stamped, and has the consequent power to punish by fine, any intentional evasion of the law in that regard, yet it has not the power to require such instruments

to be stamped as a pre-requisite to their validity and binding force, or to their admissibility in evidence in the State courts.

2. Congress has power to prescribe rules of evidence, and specify what shall be instruments of evidence in the federal courts, but it belongs to the States exclusively to declare what shall be received in evidence in their own courts.

3. So, a chattel mortgage, filed for record prior to the issue of an execution, in favor of a judgment creditor, is admissible in evidence, notwithstanding the revenue stamp required by the act of June 30, 1864, was not placed upon the instrument, and canceled at the time of filing such instrument for record.

4. SAME,—*construction of the act of Congress of June 30, 1864.* But, even under the provisions of this act, it must be shown that the negligence to affix the stamp was willful and fraudulent, with intent to evade its provisions, before the penalty is incurred, or the instrument required to be stamped, is in any manner affected by the omission.

5. And, as that act does not, in terms, prescribe what shall be the rule of evidence in the State courts, in respect to the stamping of instruments, it must be intended the provisions of the act, in that regard, were designed to apply only to the federal tribunals.

6. SAME—*power of Congress to tax the process of State courts.* Congress, however, has no power, under the pretence of raising a revenue, to impose a tax upon writs and process of State courts.

7. The State and Federal governments are sovereign and independent within their respective spheres, and as the States cannot tax any of the constitutional means employed by the general government wherewith to execute its constitutional powers, so, neither can the general government impose a specific tax of any kind upon any of the indispensable governmental functions of the States, and of this character are the writs and process of the State courts.

8. BONA FIDE PURCHASER—*of notice of adverse claim.* A right acquired in good faith on the part of the purchaser, is understood to be a right acquired without notice of an adverse claim, and the knowledge of the existence of a mortgage, itself valid by the laws of this State, prior to an execution lien, is such notice.

9. CHATTEL MORTGAGES—*of the recording thereof.* A chattel mortgage is, to all intents and purposes, a record from the time it is filed for record, and notice to subsequent purchasers and incumbrancers; it is not essential, to give it that effect, that it should be actually spread upon the record.

APPEAL from the Circuit Court of Adams county; the Hon. JOSEPH SIBLEY, Judge, presiding.

The facts are fully stated in the opinion.

Messrs. WARREN & WHEAT, for the appellant.

Messrs. WHEAT & MARCY, for the appellees.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action of replevin, brought to the circuit court of Adams county, at the October term, 1867, by Gersham B. Dimock and Cyrus W. Hilborn, against Henry C. Craig, for a wagon and two horses, and tried by the court without the intervention of a jury, and a verdict for the plaintiff.

Judgment was rendered on the verdict, and the defendant appeals to this court.

The plaintiffs claimed the property under a chattel mortgage, executed on the 19th of March, 1867, by one Holden, to them, to secure a note of that date, for one hundred and fifty-three dollars and twenty-five cents, payable in two years from date, with the usual clause in the mortgage that the property should remain with the mortgagor until the maturity of the note. The mortgage, by inadvertence, had no stamp upon it, and it was in that condition when placed in the recorder's office for record, which was on the 14th day of June, 1867, but was not actually recorded, it not being reached in order, until the 21st day of June, on which day one of the plaintiffs, Hilborn, at the recorder's office, put the proper stamp upon it and canceled it, and the recorder spread it on his records.

Samuel R. Chittenden, on the 20th day of June, 1867, recovered a judgment in the circuit court of Adams county, against the same Holden, for five hundred and sixty-three dollars and fifty-eight cents, on which an execution was duly issued on the following day, and placed in the hands of the defendant, then sheriff of Adams county, who levied the same

on the property in question, and embraced in the chattel mort-
gage.    It was in proof, the execution was delivered to the
sheriff before the chattel mortgage was stamped and spread
upon the records.    The certificate of the clerk of the circuit
court states that the mortgage was filed for record on the 14th
day of June, 1867, and recorded on that day in book 7, of
chattel mortgages, at page 141.

On the 24th of June, 1867, the collector of internal rev-
enue for the Quincy district came to the office with one of
the plaintiffs, Hilborn, and then and there put another fifty
cent stamp upon the mortgage, and cancelled it, and advised
Hilborn to have the mortgage re-filed and recorded again,
which Hilborn declined doing.    It is admitted that Chitten-
den, the judgment creditor of the mortgagor, Holden, saw and
read the mortgage in the recorder's office, the day before he
caused his execution to be issued and levied.

The discrepancy between the certificate of the recorder, that
the mortgage was recorded on the 14th of June, and the proof
that the stamp was not placed on it until the 21st, and on that
day recorded, is reconciled on the supposition that the recorder
considered, and no doubt correctly, that the record should refer
to the time when the deed was actually deposited in the office
and filed for record, which was on the 14th of June, 1867.

There is no pretence, in this case, that the omission of the
proper stamp was with the intent to evade the provisions of
the "stamp act," of June 30, 1864, or of any other act of Con-
gress, but was solely the result of neglect and inadvertence.

The facts stated, raise the question argued by appellant, as
to the validity of this mortgage as an instrument of evidence.
He contends that it, and the record of it, are inoperative as
against him, and were improperly admitted in evidence.

This question involves the consideration of the act of Con-
gress of June 30, 1864, entitled, "An act to provide internal
revenue to support the government, to pay interest on the
public debt, and for other purposes."

By schedule B, accompanying that act, a mortgage of real or personal property, made for the security of any certain sum of money, due and owing, exceeding one hundred dollars and not exceeding five hundred dollars, is subject to a duty of fifty cents.

Section 152 declares that it shall not be lawful to record any instrument, document or paper, required by law to be stamped, unless a stamp, or stamps, of the proper amount shall have been affixed and canceled in the manner required by law; and the record of any such instrument upon which the proper stamp, or stamps, shall not have been affixed and canceled, shall be utterly void, and shall not be used in evidence.

By section 158 it is provided, that any person who shall make, sign or issue any instrument, document or paper of any kind or description whatsoever, without the same being duly stamped, or having thereupon an adhesive stamp for denoting the tax chargeable thereon, and canceled in the manner required by law, *with intent to evade the provisions of this act*, shall, for every such offence, forfeit the sum of fifty dollars, and such instrument, document or paper, not being stamped according to law, shall be deemed invalid and of no effect.

Section 163 declares, that hereafter no deed, instrument, document, writing or paper, required by law to be stamped, which has been signed or issued without being duly stamped, or with a deficient stamp, nor any copy thereof, shall be recorded, or admitted, or used as evidence in any court, until a legal stamp, or stamps, denoting the amount of tax, shall have been affixed thereto as prescribed by law.

This is all the legislation of Congress necessary to be noticed now, the curative portion of section 158 being to be hereafter considered.

The object of this act, and of all other acts of Congress of like nature, is to raise money to support the Government, and pay its debts, and for this purpose, vast powers were

granted by the States in framing the constitution of the United States, to the Congress established by it; but the powers not delegated to the United States by the constitution, nor prohibited by it to the States, were reserved to the States respectively, or to the people.

While, then, the power to levy taxes for the purposes indicated in the constitution may be admitted, it cannot be admitted it can be so exercised as to take from the domain of State legislation, all such subjects as are properly confided to it, and the care of which has not been surrendered to the Congress, by the States. Of this nature are the process of the State courts in judicial proceedings. By the act of Congress, approved July 1, 1862, which is amended by the act now under consideration, legal documents, such as writs, warrants, cognovits, etc., were made subject to a duty and were required to be stamped, and if not stamped, were to be deemed invalid and of no effect. At a very early period after the passage of that act, the question arose in the courts of several of the States, as to the validity of the requirement, and although the plenary power of Congress to raise a revenue to meet the wants of the Government by the imposition and collection of taxes, duties, imposts and excises, was admitted, no reasoning urged in support of the general power was regarded as sufficient to establish the power of Congress to impose a tax upon the writs and processes of State courts. It could not be shown, and was not shown, that Congress had not only an unlimited power to tax the property of the country, and other subjects to which this power is applicable, but that it could directly tax the means employed by the States in exercising their powers of government. Such was the opposition of the State courts and of the sentiment of the country to this provision of the act, that the law before us, and other subsequent acts of the same character, omitted the provision, and such documents are no longer declared to be taxable.

Ours is a complex system of government, ordained by wise men, and wholly unlike that of any other country. Its character is expressed in the motto on the seal of the United States, " *E pluribus unum*," one government or one republic composed of many governments or republics, or, many States confederated. This was the established and almost universally recognized view of the structure of our government for more than seventy years; to allow, then, the construction contended for by appellant, would change the system from the federative to a centralized and consolidated system. Under the first, the States which established the constitution, were in the free exercise of all the rights and powers they had not surrendered to the general government, and upon all subjects and questions within their respective spheres, were regarded as sovereign and independent, to the same extent as was the general government within its sphere of action—neither having the constitutional right to interfere with the other in the exercise of its proper functions. It has never, until recently, been denied, that the sovereignty of a State extended to every thing which existed by its own authority, or introduced by its permission. While, then, it is readily accorded to the general government the unlimited sovereignty over every thing which exists by its own authority, or is introduced by its permission, and to tax it for all constitutional purposes, it cannot be conceded this power extends to things and subjects which exist in the States, by permission of the States, and not in violation of any act of Congress or requirement of the federal constitution. It was upon this principle the case of *McCulloch* v. *The State of Maryland* was decided, reported in 4 Wheaton, 316. It was urged in that case with great force, by the eminent Chief Justice of that court, that the State of Maryland had no right to tax any of the constitutional means employed by the general government wherewith to execute its constitutional powers, nor to retard, impede, burden, or in any manner control the operations of a constitutional law created

by Congress to carry into effect the powers vested in the general government. It was urged, that the power to tax involved the power to destroy; that the power to destroy might defeat and render useless the power to create, and that there was a plain repugnance in conferring on one government a power to control the constitutional measures of another, which other with respect to those very measures, is declared to be supreme over that which exerts the control.

These principles applied to the power to tax the process of State courts by the operation of an act of Congress, settles the question of power against the act of Congress, because, judicial process, being wholly under the control of the respective States, when issuing from, or used in their courts, and being indispensable in the execution of the powers of the States, is as far removed from interference by the taxing power of Congress, as any of the instrumentalities of the general government, created to carry into execution the powers with which it is vested, are removed beyond the interference of the State authorities. If State process could be taxed by the United States, it could be absolutely prohibited and destroyed by such a power brought to bear upon it, and as the States are sovereign in respect to the matters committed to them, the Congress cannot, by taxation, or in any other manner, retard, burden or control their operations, within the field of their duty, nor impose a specific tax of any kind upon any of the indispensable governmental functions of the States. A tax upon a writ, is a tax upon the necessary means which the judicial department of every State government must use in order that justice may be administered within its borders. The means cannot be exposed to the action of any other power, or be claimed to exist only by the sufferance of Congress.

Intimately connected with this, is, in our judgment, the question raised on this record. Can Congress declare what instruments shall be, or shall not be evidence in a State court in

a case therein pending, growing entirely out of a domestic transaction, and which the laws of the State declare shall be evidence?

We do not think it requires any argument to prove, that Congress, under the constitution, has no such power, and under the pretence of levying taxes, cannot so direct that power as to enter into our State courts and take from them the powers with which the State laws have vested them.

It is eloquently remarked by Chancellor KENT that, "The vast field of the law of property, the very extensive head of equity jurisdiction, and the principal rights and duties which flow from our civil and domestic relations, fall within the control, and we might almost say the exclusive cognizance of the State governments. We look essentially to the State courts for protection to all these momentous interests." 1 Kent's Com., 483. To hold that Congress, in the exercise of the taxing power, can enter into these courts, and prescribe what shall be evidence therein, is so revolting to all our notions of federal and State power as to compel us to refuse to yield any acquiescence in such a doctrine. By admitting it, the power and sovereignty of the States over legitimate subjects of State power and sovereignty, are at once annihilated.

We will not deny the power of Congress to require such instruments to be stamped, nor the consequent power to punish by fine, an intentional evasion of the law. By conceding this, we yield all that is necessary to enable the government to carry into full effect the taxing power, and at the same time sustain and uphold in its utmost limit the exclusive power of the State to say what shall be evidence in her own courts of justice, in a domestic transaction, wholly unconnected in every respect with the general government. It is not questioned that the Congress has power to prescribe rules of evidence, and specify what shall be instruments of evidence in the federal courts, but is powerless to prescribe them for the

State tribunals, as we think.    Since the act then, does not in terms, prescribe such rules to state courts, we must conclude that the provisions of the act were only intended to apply to the federal tribunals.    We will not, by implication, hold that the intention of the Congress was to invade the jurisdiction of the States, in the administration of justice between their citizens.    Similar views seem to have been entertained by the supreme court of Massachusetts, in *Carpenter* v. *Snelling*, Am. Law Review, 774, to be reported in 1 Brown, and is, doubtless, the true construction of the act.

But, perhaps, the case before us does not require us to go to the extent we have gone in sustaining the circuit court in admitting this mortgage as evidence?

The question may be viewed in this light—is an instrument, unstamped by reason of negligence alone, and with no design to evade the revenue laws, if thereafter stamped, void and of no effect and not to be received in evidence.

The original act of 1862, did not contain the qualification in regard to the omission to stamp the paper, that it be, " with intent to evade the provisions of the act."    This qualification must apply to all the sections of the act of 1864, which we have quoted, as they are upon the same subject, and it seems clear to our minds, that the penalty is not only not incurred, unless the neglect to stamp be willful and fraudulent, but the instrument is not designed to be made invalid, unless the omission to stamp is " *with the intent to evade the provisions of the act ;*" in other words, to defraud the government of the duty.    This mortgage, negligently omitted to be stamped, has, in fact, paid double duty to the government, once by the stamp placed on it by Hilborn, on the 21st of June, and again by the collector of the district on the 24th of the same month.    Under such circumstances, to declare a forfeiture of the instrument and of the property secured by it, would be monstrous.    It is a forced and unnatural construction of the act, to contend, that while the penalty was only

incurred for a willful and fraudulent evasion of the duty, the forfeiture of the instrument, a much more serious loss, and falling upon an innocent party, was to apply to a careless and thoughtless omission to fix the proper stamp, as well as to an intentional and fraudulent omission. The law reads "such" instrument, namely: one that has been attempted to be put in circulation by a fraudulent non-compliance with the terms of the act which is "to be deemed invalid and of no effect," and not one which, through inadvertence or ignorance, or haste, has been mistakenly, though honestly, issued without a compliance with the law.

No court would convict the party failing to affix the stamp on this mortgage under the proof here exhibited, as it is clearly shown, it was omitted with no fraudulent intent; is it not, then, absurd to say the mortgagee shall lose the benefit of the mortgage, when no willful *delictum* is established against either party? Such a judgment would outrage the sense of justice of every man.

Appellant claims, that although the appellees did all the law required of them to cure the defect in the mortgage, by the intervention of the collector, still, before he acted, rights had been acquired by the judgment creditor, which are protected by the last clause of section 158, which is to the effect, "that no right acquired in good faith before the stamping of such instrument or copy thereof, and the recording thereof as herein provided, if such record be required by law, shall in any manner be affected by such stamping as aforesaid."

The first inquiry here is, what is the effect of a re-stamping by the collector? Clearly, it seems to us, to make the mortgage valid from its inception—it is made valid by this section, "to be used in all courts and places in the same manner and with like effect as if the instrument had been originally stamped."

On the very day Hilborn placed the first stamp upon the mortgage, it having been in the office for record one week, appellant levied the execution upon the property described in it, and the day before, the mortgage had been seen in the office and read by the plaintiff in the execution. He, therefore, knew, before he levied his execution, there was a mortgage filed for record, which the laws of this State regarded as valid, and if defective for the want of a stamp, he also knew that defect could be remedied, and his observation and knowledge of such transactions, might have told him the omission of a stamp was accidental, and not with a design to defraud the government.

A purchase of an article in good faith, or a right acquired in good faith, is understood to be a right acquired without any notice of an adverse claim. Here, the party had actual notice of the existence of a mortgage prior in time to his lien, and valid by the laws of this State, and we do not perceive how he can be helped by this clause of the section.

Another point is made by appellant, that under our chattel mortgage act, the deed must be actually spread upon the record before it can operate as notice, and the cases of *Porter* v. *Dement*, 35 Ill. 478, and *Forest* v. *Tinkham*, 29 ib. 141. referred to in support of the position.

The first case turned entirely upon the effect to be given to a record of a copy of a chattel mortgage, nor can we see that the last has any bearing on the point made. In the last case, it was simply decided, that an unrecorded mortgage and unacknowledged, though obligatory upon the parties, was void as to third persons. Whether filing such a paper for record is not equivalent to recording, is not decided.

Section 2, of the chattel mortgage act, provides, that any mortgage of personal property so certified, shall be admitted to record by the recorder of the county in which the mortgagor shall reside at the time, when the same is made, acknowledged and recorded. So, with deeds or mortgages of real

property, the recorder is required to keep a book, in which he shall enter every deed or writing brought to his office to be recorded, mentioning the date, the parties and the place where the lands are situate, dating the entry on the day on which the deed or writing was brought to his office, and he must record them in regular succession, according to the priority of time of their being brought into the office.

Under this requirement, this court held, in *Merrick* v. *Wallace*, 19 Ill. 486, that a party performs his duty by leaving his deed for record with the proper officer, and we see no reason why the same rule should not apply to chattel mortgages. In this case, the mortgage was filed in the recorder's office on the 14th of June, but not reached in the order of time, to be recorded, until the 21st of June. From the 14th of June, it was, to all intents and purposes, a record, and notice to subsequent purchasers and incumbrancers.

Believing the merits of this case to be wholly with the appellees, and that the mortgage was a valid instrument under the laws of this State, and of which the plaintiff in the execution, whom appellant represents, had legal and actual notice, it would be unjust to give him a preference over the mortgagee, under the circumstances of this case, and we must affirm the judgment.

*Judgment affirmed.*

Mr. JUSTICE LAWRENCE, dissenting :

I do not understand either counsel or the majority of the court to deny that Congress has the power to impose what is known as a stamp tax. Conceding this, it follows, in my judgment, that that body has, also, the incidental power of declaring the penalty for failure to affix a stamp, which penalty may be a fine or the avoidance of the unstamped instrument, or both. Only by recognizing this incidental power can the power to tax by means of stamps be made effective. I, therefore, dissent from the opinion of the majority of the court upon this question.