## OATS VS. WALLS.

REGISTRY LAWS: *What constitutes filing under, etc.*

To secure a party his full rights under our registry laws, the substantial act to be done is to take the writing or instrument and cause it to be placed on file, for record, in the office where such instruments are to be recorded, and to pay the fees allowed by law for recording, and such deposit may be made with the person in charge or custody of the office; and being so deposited, with one having the control of the office for the time being, it does not devolve on the party to show that his deed or instrument was put in the hands of the recorder or a regular deputy; the one in charge, and performing the duties of the office, has sufficient authority for such purpose.

APPEAL from *Monroe* Circuit Court.
HON. M. L. STEPHENSON, Circuit Judge.
*Rose & Green*, for appellant.
*Hughes & Smith*, for appellee.

GREGG, J.    Oats brought replevin for certain cotton in the

possession of Walls; the particular cotton, its value, its possession by Walls, etc., were agreed upon. The only question was the rights of the parties under certain mortgages from Aleck Bennett.

In June, 1870, said Bennett duly executed a deed of mortgage to the appellant Oats, upon the cotton in controversy.

On the 28th of that month the appellant took this and certain other mortgages of his to the proper clerk's office to have them recorded. He found Calvert, a young man, alone in charge of the office; he did not know the clerk or his deputy, and supposed Calvert was the proper person to receive deeds for record; he made no inquiry as to his authority or about the clerk, but stated he wanted his mortgages recorded. The young man took them, indorsed on them the date of the filing, signed the clerk's name thereto, made up the amount of fees for recording, which appellant paid him; he put the mortgages in the place in the office where unrecorded deeds were kept for record. The appellant supposed all was right, and left; and made no further inquiry about his mortgages until about the last of January or the first of February, 1871, when he sent by one Jackson for his mortgages at the clerk's office. Jackson returned a package enveloped, and told him those were his deeds, which he placed in his desk without examination, supposing they had been recorded and returned to him.

In April following, appellee told appellant that he had no valid mortgage on Bennett's cotton, etc., when appellant for the first time examined the package and found there was no certificate of record upon the mortgage that included Bennett's cotton. He then took it out of the package brought by Jackson and sent it back to the clerk's office for record, if not already recorded. On the day following, the 11th of April, he applied in person to the clerk to enquire into the matter, and the deed was lost or mislaid, and after repeated searches

it was not found for ten or twelve days; the clerk then recorded it on the 22d of April, 1871, and indorsed the usual certificate of record that the mortgage was filed for record on the 28th day of June, 1870, and recorded on the 22d day of April, 1871, etc. And he also wrote on the deed a certificate, not under seal but signed by him, that "this deed of mortgage was taken out of the office and was not recorded on that account and not returned by Mr. Oats until the 10th day of April, 1871, at six o'clock in the evening."

In January, 1871, the appellee went into the clerk's office and inquired if there was any mortgage recorded or on file, from Bennett to the appellant; the recorder examined and could find none, and the appellee did likewise ; afterward on the 11th of January, 1871, Bennett duly executed to him a deed of mortgage embracing this same cotton, which mortgage on the next day was filed in the office of the clerk for record, and duly recorded and certified to on the 10th of April, following; on that day he again inquired and had search made and the clerk told him there was no such mortgage recorded or on file.

The appellee then bought the cotton from Bennett for $337, which Bennett owed him, took a bill of sale for the cotton and took it into possession.

On the same day the clerk gave him a certificate under the seal of his office, that the mortgage given by Aleck Bennett (colored) to John T. Oats was left in his office by the said Oats, and as soon as filed, he, the said Oats, called for the deed and took the same from the office, and that there was no such mortgage on file or of record in his office, etc.

On this same day the appellee told appellant that he had no valid mortgage, etc ; that appellee had bought the cotton, etc.

It appeared that young Calvert was a stepson of the clerk ; that he had been employed to write in the clerk and record-

er's office since January, 1869; but that he had never been appointed a deputy, and he was not authorized to mark the filing of papers or to sign the clerk's name; that he was alone in the office when the appellant brought the mortgage in, etc.

· The appellant's mortgage never came into the hands of the clerk or his regular deputy, and neither of them knew it was ever filed in the office until the 10th of April, 1871.

Both appellant and appellee had valid subsisting demands to the full worth of the cotton, against Bennett, and the question is one of diligence — who had priority of right.

By section 2, chapter 117 of Gould's Digest, p. 799, "Every mortgage, whether of real or personal property, shall be a lien upon the mortgaged property, from the time the same is filed in the recorder's office for record, and not before, which filing shall be notice to all persons of the existence of such mortgage."

Upon this law and the state of facts as given, we are called upon to decide who — Oats or Walls — first obtained a lien upon the cotton in controversy.

Our own court, through Justice Bennett, in the case of *Harrison & Stewart v. Lewis, Commissioner*, 27 Ark., 154, said:

"The certificate of entry now before us was issued in strict conformity to the above enactment, with the exception of making a note of such entry on his township maps, and in his books to be kept for that purpose. It is a well established principle that when an individual, in the prosecution of a right, does everything which the law requires him to do, and he fails to obtain his right by the misconduct or neglect of a public officer, the law will protect him." *Lytle v. The State*, 9 How., 333.

In the *United States v. Castillero*, 2 Black, 97, the supreme court of the United States say: "Besides, it is a universal rule that omissions, by a public officer, in the mode of complying with forms prescribed to him as his duty, are

not permitted to affect the party." *Nichols v. Reynolds*, 1 R. I., 36.

In 5 J. J. Mar., 558, it is said the mistake of the officer ought not to prejudice the rights of the parties. To the same effect, see *Merrick v. Wallace*, 19 Ill., 486 ; 3 Pet., 338.

That the grantee was only bound to properly file his deed for record, and thereafter it was the duty of the clerk (for the performance of which the clerk alone is responsible) to note the filing and enter it upon the record, is in effect held by the above and other cases. In the case of *Merrick v. Wallace, supra*, the court said : " But assuming the deed was not properly recorded in the first instance, we then say it was sufficient the *deed was left for record* by the grantee ; he performed his whole duty by so leaving it with the recorder," etc. They say : " The statute law in force at the time required that the deed be filed for record in the county where the lands lie.    *  * To the statute alone must we look for a purely statutory right. All that this law required of the grantee in the deed was, that he should file his deed for record in the recorder's office, in order to secure his rights under the deed. When he does that, the requirements of the law are satisfied, and no right to claim this forfeiture can be set up by a subsequent purchaser."

The next question is, Was Oats' deed legally filed for record — filed at the proper place and with the proper person ?

This court in the case of *Bettison v. Budd*, 21 Ark., 580, declared that " the filing of a paper does not consist of the marking put on it by the clerk, but in placing it as a permanent record in the office or case where it belongs." See also 12 Ark., 64; 7 id., 469 ; and 6 id., 210.

In these cases it is clearly held that the filing of a deed consists in placing it where it should be for recording; what is thereafter to be done to complete the record is the

clerk's duty, and, as above shown, is not to go to the preju-
dice of the deed.   1 Root Con., 500.

Did the failure to note the filing and to spread the mortgage
upon the record cut off the statutory and constructive notice
to subsequent purchasers, and thereby give such purchasers a
good title, and leave the responsibility of the failure between
the clerk and the first mortgagee?

In case of *Merrick v. Wallace, supra*, the court said: "If it
(the mortgage) was not properly recorded after the grantee
had left it to be filed for record, and, by reason thereof *a sub-
sequent purchaser is misled, he surely* has no right to say the
first purchaser shall suffer by this omission of the recorder to
perform his duty.   *   *   He must seek his remedy against
the recorder."

In the case of *Bosley v. Ellis & Allen*, 1 Randolph, 106, in
speaking of recording a mortgage, the supreme court of Vir-
ginia say: "If there is any defect in the notice when searched
for, the subsequent purchaser, perhaps, has his remedy against
the clerk, if it was his duty to make it perfect.   *   *   The
appellant being compelled by the act to lodge it with the
clerk, his loss of it would more properly subject him to *the
action of the subsequent purchaser* in the event he sustained
damage."

Finally, was the delivery made to Calvert a sufficient filing?

In the case of *Bosley v. Forquar*, 2 Blackf., 63, the supreme
court of Indiana held the court below was correct in charging
the jury that, "if they believed from the evidence that Lind-
ley did act generally as the deputy of Bosley, and with Bos-
ley's knowledge and consent, that Bosley was responsible for
his acts."

In the case of *Bishop v. Cook*, 13 Barb., 327, where there
was a vacancy in the office, the court said: "One Estee had
the keys of the office, and the mortgage in question was placed

among the chattel mortgages in the office on the day mentioned, and indorsed by him, filed October 20, 1845.  *  * The statute is that the mortgage shall be void as against creditors, etc., unless the mortgage or a true copy thereof shall be filed in the office of the town clerk.  Estee, who appears to have had charge of the office,  *  * received the mortgage, marked upon it the time, and placed it among the chattel mortgages in the office.  This, in my opinion, was a filing of it, within the meaning of the statute.  *  * The filing consisted in presenting the mortgage at the office and leaving it there, and depositing it in the proper place with the papers in the office."

In *Cook v. Hall*, 1 Gil., 575, where the agent of the holder took the deed to the recorder's office and handed it to one Hague, who was not a deputy, but had charge of the office at the time, and who entered the date of the filing, the supreme court of Illinois held that this was a good filing for record.

And in the case of *Dodge v. Trotter*, 18 Barb., 202, the supreme court of New York says: " The objection to the reading of the mortgage in evidence, and the motion for a nonsuit for reasons that the mortgage was filed by a person other than the town clerk, and that it was not numbered, were not well taken.  The filing by a clerk in the store of the town clerk, in charge of the town clerk's office in the absence of that officer, was sufficient.  It was the duty of the town clerk, and not of the mortgagee, to number the mortgage.  The rights of the mortgagee could not be impaired by the omission to perform that duty.

From these authorities as well as from our own reflection and reasoning upon our statute, its origin and purposes, we find that the substantial act to be done by a mortgagee to secure his full rights under our registry laws was to take his mortgage and cause it to be placed on file for

record, in the office where such instruments are to be recorded, and to pay the fees allowed by law for recording; and that such deposit may be made with the person in charge of the office. And when deposited with one who has control of the office for the time being, it does not devolve on the mortgagee to show that his deed was put in the hands of the recorder, or a regular deputy. One in charge and performing the duties of the office has sufficient authority for such purpose. The clerk is responsible for the acts of one thus placed in possession of the keys and papers in his office.

If in the absence of the clerk a mortgagee was required to file his mortgage with a regular deputy, that would involve the necessity of examining into the validity of his appointment, oath of office, etc., a practice not reasonable or ever contemplated in such cases.

In this case, Oats took his deed to the proper office, placed it in the hands of the person there in charge, and paid the fees for recording — this was all he was required to do. And any acts thereafter to be done to perfect the record and make the notice full to all subequent purchasers, etc., devolved upon the clerk, and could not operate to the prejudice of the mortgagee, as shown, by the above authorities.

Other things being equal, the maxim is: he who is prior in time is prior in right; or the rule as given by the supreme court of the United States, "that when an individual in the prosecution of a right does everything which the law requires him to do, and he fails by the misconduct or neglect of a public officer, the law will protect him," is applicable here.

We then have authority and justice for sustaining the rights of him who first took the necessary action to secure his debt out of this property. And if Wall, the subsequent mortgagee and purchaser, used due diligence by having the records examined, etc., and was led to the purchase of the property

Oats vs. Walls.

by reason of finding no record of Oats' mortgage he has his remedy against the recorder individually, or upon his official bond.

One who seeks public favor, and is entrusted with position honorable and lucrative, must assume the responsibilities necessary for the public good, and a part of the county clerk's duty is to remain in his office or keep some competent representative therein, at reasonable hours to perform all such official duties as the exigencies of business may require, and when he fails to perform such duties as the law demands of him he must meet the responsibility consequent thereupon.

It is no excuse for him to say a deed was filed and afterward lost, and hence not recorded. When a deed is placed in his office for record he becomes its custodian. If such grantee or other person demands the contents, he can furnish a copy, for which he is entitled to ample pay.

And, officers ought to realize that these lucrative positions are not created merely to enrich their holders, but for the public good, and that these high emoluments carry with them a high responsibility.

The declarations of law and the finding upon the evidence in the court below should have been for the appellant.

The judgment is reversed, and the cause remanded to be proceeded in according to law.

STEPHENSON, J., being disqualified, did not sit in this case. Hon. C. C. FARRELLY, Sp. J.